WOODS CORPORATE ASSOCIATES, a joint venture, New Jersey Partnership, Damon G. Douglas Company, a New Jersey Corporation, and GRC Management Company, a New Jersey Corporation, Plaintiffs,

v.

SIGNET STAR HOLDINGS, INC., and Penn Mutual Life Insurance Company, a Pennsylvania Corporation, Defendants.

Civil Action No. 95–646 (AMW).

United States District Court,
D. New Jersey.

Dec. 21, 1995.

---

James A. Scarpone, Hellring, Lindeman, Goldstein & Siegel, Esqs., Newark NJ, for plaintiffs.

Donald A. Robinson, Robinson St. John & Wayne, Newark, NJ, for Signet Star Holdings, Inc.

Jonathan I. Epstein, Drinker, Biddle & Reath, Princeton, NJ, for Penn Mutual Life Insurance Company.

## OPINION

PISANO, United States Magistrate Judge:

Presently before the Court are the motions of defendants Signet Star Holdings, Inc. and Penn Mutual Life Insurance Company for summary judgment and the cross-motion of plaintiffs Woods Corporate Associates, Damon G. Douglas, and GRC Management Company to abstain from exercising its jurisdiction and remand this action to state court. On May 16, 1995, the parties consented to the jurisdiction of the undersigned to decide these dispositive motions, pursuant to 28 U.S.C. § 636(c)(1).

The Court did not hear oral argument and has decided these motions based upon the written submissions of the parties, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court denies the motion of plaintiffs to abstain or remand the action to state court and grants both defendants' motions for summary judgment.

## BACKGROUND

This action arises out of financing transactions surrounding the construction of a two-story office building in Bernards Township, New Jersey. Plaintiff Woods Corporate Plaza Associates ("Woods") is a joint venture New Jersey partnership comprised of 911 Associates, a New Jersey general partnership, and plaintiff Damon G. Douglas ("Damon Douglas"), the fee owner of the real property involved in this dispute. Plaintiffs filed their Complaint in Superior Court in Morris County, New Jersey, and defendant Signet Star Holdings, Inc. ("Signet") subsequently removed the action to this Court.

### I. Factual Background

In 1985, Damon Douglas leased the Bernards Township property to Woods for a term of seventy-five years, and plaintiff GRC received the right to manage the property on behalf of Damon Douglas and Woods.

Following execution of its lease of the property, Woods constructed the two-story office building that is at the center of this litigation (the "Premises"). In order to finance the construction, Woods borrowed $3,550,000 from defendant Penn Mutual Life Insurance Company ("Penn Mutual") through a non-recourse loan evidenced by a promissory note set to mature on December 1, 1992. As security for the repayment of the loan, Woods and Damon Douglas gave Penn Mutual a mortgage on the property (the "Mortgage"), and Woods executed and delivered to Penn Mutual a Collateral Assignment of Rents and Leases (the "Assignment").

In December, 1989, Woods leased to defendant Signet the entire second floor of the Premises for a term ending in 1998. The agreement expressly stated that the lease ("the Signet Lease") was to be subordinate to the Mortgage. The Lease also provided that

any mortgagee of Woods would not disturb Signet's leasehold in the event of a foreclosure and Signet's attornment to the mortgagee.

On December 1, 1992, Penn Mutual's loan to Woods came due, and Woods failed to pay the principal and interest then owing under the note. By letter of January 6, 1993, Penn Mutual notified Signet that Woods had defaulted on the Mortgage and directed Signet to attorn to and tender all rents directly to Penn Mutual as landlord. Also, Penn Mutual initiated a foreclosure action in Superior Court in Somerset County, New Jersey in which it named Woods, 911 Associates, Damon Douglas, and Signet as defendants. All of the defendants, including Signet, answered the Complaint and admitted the validity of the Mortgage and its priority over the Signet Lease.

Woods, 911 Associates, GRC, and Penn Mutual entered into a Consent Order providing for the appointment of a receiver of the Premises during the pendency of the foreclosure action.[1] After the appointment of the receiver, Woods and Penn Mutual commenced negotiations to restructure the loan. The negotiations contemplated an extension of the term of the Mortgage if Woods were able to lease the vacant first floor of the building. Penn Mutual and Woods communicated through a series of Letters of Intent in which the terms of the proposed loan restructuring were discussed. The Letters of Intent, however, contained express statements recognizing that they did not constitute binding modifications of the debt.

As envisaged in the final Letter of Intent, dated August 2, 1993, the proposed restructuring of the Mortgage was conditioned upon the execution by Signet of a Lessee's Statement. The statement was to provide that there had been no modifications or changes to the Lease, that there were no current defaults by either party to the Lease, and that Signet had consented to Woods assigning the Lease to Penn Mutual. Signet declined to sign the Lessee Statement, contending that its tenancy had been destroyed by virtue of its being named as a defendant in Penn Mutual's foreclosure action. Signet's

position was that the Lease had been extinguished by Penn Mutual's complaint, which demanded that Signet relinquish possession of the Premises, and therefore, Signet advised Penn Mutual of its intention to vacate the premises on November 1, 1993.

## II. Plaintiffs' Claims Against Signet

Counts One and Two of Woods' Complaint seek recovery from Signet and arise out of the Signet Lease. Immediately following Woods' default on the loan, Penn Mutual gave notice to Signet to attorn to Penn Mutual as landlord and tender all rents to Penn Mutual, and Signet did so. Three months later, Penn Mutual instituted the foreclosure action, named Signet as a defendant, and demanded possession of the Premises. In Signet's answer to Penn Mutual's complaint, it admitted the validity of the Mortgage and its priority over the Signet Lease. Damon Douglas and Woods similarly filed an answer in the foreclosure action, both admitting that Penn Mutual was entitled to possession over Signet. Following the appointment of a receiver, Penn Mutual moved for summary judgment on all counts of its Complaint in the foreclosure action. Woods and Damon Douglas did not oppose the motion, believing to be imminent a restructuring agreement that would render the foreclosure action moot. Similarly, Signet did not oppose the motion. By Order dated July 23, 1993, Judge Diana of the New Jersey Superior Court, Chancery Division struck the answers of Woods, 911 Associates, and Damon Douglas and remanded the case to that Court's foreclosure unit to proceed as an uncontested action.

Meanwhile, Penn Mutual and Woods had been exchanging the Letters of Intent in pursuit of an agreement to restructure the defaulted loan. The restructuring arrangement was contingent upon the lease of both floors of the Premises. Woods had been negotiating with AT & T for a lease on the first floor of the building, and AT & T had entered the building and begun making improvements to the first floor space. As alleged by Woods in the Complaint, the re-

---

1. Signet took no position as to the appointment of a receiver.

structuring deal was contingent upon the continuation of the Signet Lease and the execution by Signet of a Lessee's Agreement.

Signet maintains the position that its lease had been terminated by virtue of its being named as a defendant in Penn Mutual's foreclosure action. Acting upon this belief, Signet notified Woods and Penn Mutual by letter of September 1, 1993 that it would be vacating the Premises on November 1, 1993, and it eventually did so. Woods argues that the Signet Lease was neither extinguished nor affected by Penn Mutual's demand for possession against Signet, and therefore, Signet's act of vacating the Premises was a breach of the Lease.

In the Complaint in this action, Woods alleges that Signet never expressed its position that the Lease had been terminated until it was presented with the Lessee's Statement that was required as part of the loan restructuring between Penn Mutual and Woods. As a result, Woods alleges, Signet frustrated the loan restructuring negotiations taking place between Woods and Penn Mutual. Woods claims that Signet was aware of the negotiations and the circulation of the Letters of Intent between Woods and Penn Mutual. Thus, Signet knew that by vacating the Lease it could prevent the execution of the restructuring agreement contemplated by the August 2, 1993 Letter of Intent. As a direct result of Signet's breach of the Lease, Woods alleges that it was unable to meet its obligations under the proposed restructuring agreement with Penn Mutual, and Penn Mutual foreclosed on the Woods' interest in the Premises. In addition to Woods losing the value of its interest in the Premises, Damon Douglas lost its interest in the real property and the value of the ground lease, and GRC lost the value of its management contract.

In Count I of the Complaint, Woods asserts a breach of lease claim against Signet, seeking to recover the rent differential between the rent paid under the Signet Lease and the much lower rent paid by AT & T as the successor tenant occupying the Signet space. Woods also seeks to recover consequential damages, including the loss of its net equity in the Premises, and punitive damages.

Additionally, in Count II of the Complaint plaintiffs Damon Douglas and GRC allege that Signet breached the Lease and vacated the Premises with full knowledge that its actions would render consummation of the loan restructuring deal between Woods and Penn Mutual impossible, thereby destroying both Damon Douglas' interest in the property and GRC's management contract. Thus, Damon Douglas and GRC claim that Signet intentionally and maliciously breached the Lease, thereby tortiously interfering with the contracts and business relations between Damon Douglas and GRC and Woods. Damon Douglas and GRC seek compensatory damages for the value of Damon Douglas' fee interest in the property and the ground lease and the value of the GRC management contract, as well as punitive damages.

### III. Plaintiffs' Claims Against Penn Mutual

Plaintiffs Woods, Damon Douglas, and GRC allege that Penn Mutual named Signet as a defendant in the foreclosure action despite Signet's compliance with the terms of the Lease and the above-market value of the rental payments. Plaintiffs allege in Count III of the Complaint that Penn Mutual negligently named Signet as a defendant in the New Jersey foreclosure action. In support of this claim, plaintiffs argue that as mortgagee Penn Mutual owed Woods, Damon Douglas, and GRC a duty to avoid unnecessary acts that would damage the value of Woods' property or interfere with the efforts restructure the loan. If Signet is ultimately found to be correct in its assertion that its Lease was extinguished by virtue of having been named as a defendant in the foreclosure action, plaintiffs allege, then Penn Mutual is liable for their damages resulting from Woods' inability to execute the loan restructuring as set forth in the August 2, 1993 Letter of Intent. In this Count, plaintiffs seek compensatory damages, including interest and costs of suit, including reasonable attorneys' fees.

Woods, Damon Douglas, and GRC also assert a claim against Penn Mutual for breach of oral agreements and bad faith. Plaintiffs allege that Penn Mutual induced

1026

them to expend enormous efforts to salvage the Premises after Signet vacated. For instance, plaintiffs secured AT & T as a tenant on terms acceptable to Penn Mutual because of its reliance on Penn Mutual's representations that it would restructure the debt. Once AT & T signed on as a tenant and the Premises were fully occupied, Penn Mutual "reneged on its prior oral representations and promises by refusing to restructure the debt beyond the August 2, 1993 Letter of Intent." Plaintiffs allege that Penn Mutual did so because it knew that plaintiffs could not comply with the terms of the Letter of Intent after Signet vacated the Premises.

Plaintiffs also allege that these actions constitute a breach of Penn Mutual's implied duty of good faith and fair dealing. As a further indication of bad faith, plaintiffs allege that Penn Mutual refused to pay the broker's commission, tenant improvement costs, and attorneys' fees incurred in connection with the AT & T lease. For these claims, plaintiffs seek compensatory damages, interest and costs of suit including reasonable attorneys' fees, and punitive damages.

## DISCUSSION

### I. Plaintiffs' Motion for Abstention or, Alternatively, for Remand to State Court

As an initial matter, plaintiffs argue that this Court should abstain from exercising jurisdiction in this case because there is a related action pending in state court. In doing so, plaintiffs urge the Court to remand this suit to the New Jersey Superior Court in Morris County, where they filed their Complaint. If the action is remanded to Morris County, plaintiffs will seek to consolidate the suit with the action currently pending between Penn Mutual and Signet. In support of this motion plaintiffs rely on *Colorado River Water Conservation Dist. v. United*

*States,* which recognized that abstention by a federal court is appropriate under certain limited circumstances to avoid the contemporaneous exercise of concurrent jurisdiction by two federal courts or by state and federal courts. 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

■ *Colorado River* abstention, or the "exceptional circumstances" doctrine, permits a district court to dismiss or stay an action when there is an ongoing parallel action in state court. As the Supreme Court explained, the principles underlying the doctrine "rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

■ Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," the fact that an action is pending in state court ordinarily is no bar to parallel federal proceedings. *Id.* Thus, the surrender of jurisdiction in deference to parallel state court proceedings for reasons of "wise judicial administration" is warranted only under "limited" and "exceptional" circumstances. *Id.* 424 U.S. at 818, 96 S.Ct. at 1246. In fact, abstention under the *Colorado River* doctrine is less common than the three constitutionally- or comity-based grounds for abstention,[2] all of which are proper only in exceptional cases. *Trent v. Dial Medical,* 33 F.3d 217, 223 (3d Cir. 1994).

■ A federal court may only abstain under the *Colorado River* doctrine when the pending state and federal actions are found to be "parallel." Thus, the initial inquiry for the Court is whether this action and the

**2.** The three traditional grounds for a federal court to abstain from exercising its jurisdiction are *Pullman* abstention (permitting a federal court to abstain when a state court determination of a question of state law might moot or change the federal constitutional issue presented in the federal case); *Burford* abstention (permitting a federal court to abstain when it is present-

ed with basic problems of state policy involving issues in which the state has expressed a desire to establish a coherent state policy and the federal court proceeding would disrupt the state regulatory system); and *Younger* abstention (permitting a federal court to abstain when there is an ongoing state proceeding regarding a vital state interest).

pending state court action are parallel. *Id.* at 223.

■ As the Third Circuit has stated, "cases are parallel so as to justify abstention under *Colorado River* when they involve the same parties and claims." *Id.* When the two cases in question are not truly duplicative in the identity of the parties and the claims, however, *Colorado River* abstention is not appropriate. The New Jersey state court action involving the Signet Lease, while arising out of the same transaction, is clearly not parallel to the action before this Court. In the pending state action, Penn Mutual brought suit against Signet for breach of the Lease. This federal action was brought by Woods and includes no claim by Penn Mutual against Signet for breach of the lease. Instead, the present suit involves contract and tort claims arising out of the several contractual relationships among the parties. Accordingly, the claims presented in the two cases are neither parallel nor duplicative, and plaintiffs' abstention argument fails.[3] The Court therefore will not dismiss the action and denies plaintiffs' motion to abstain.

■ Alternatively, plaintiffs urge this Court to remand the action to the New Jersey state court from which it was removed, again relying on principles of abstention. Since *Colorado River* abstention is inappropriate in this case, the Court similarly will not remand the action. When the court has diversity jurisdiction, it has "no authority to decline to hear [a] removed case." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 356, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1987); *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1214 (3d Cir.1991).

## II. The Summary Judgment Motions

Signet seeks summary judgment on Woods' claim for breach of the Lease and on Damon Douglas' and GRC's tortious interference claim. Penn Mutual has moved to dismiss for failure to state a cause of action Woods', Damon Douglas', and GRC's claims of negligence, breach of an oral agreement, and bad faith. Alternatively, Penn Mutual seeks summary judgment on each of those claims.

### A. Summary Judgment Standard

■ The standard for granting summary judgment under Federal Rule of Civil Procedure 56 is a stringent one: summary judgment shall be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). *Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986). In deciding a motion for summary judgment, a federal district court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the Court is "not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The standards announced by the Supreme Court in its trilogy of cases addressing this subject mandate that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48,

---

**3.** Because of this conclusion, the Court need not examine the additional factors that must be satisfied in order to justify abstention under the *Colorado River* doctrine. When simultaneously pending actions are found to be parallel, the federal court must examine the following factors to determine whether abstention under *Colorado River* is appropriate: 1) which court first assumed jurisdiction over the property involved, if any; 2) whether the federal forum is inconvenient; 3) the desirability of avoiding piecemeal litigation; 4) the order in which the respective courts obtained jurisdiction; 5) whether federal or state law applies; 6) whether the state court proceeding

would adequately protect the federal plaintiff's rights. *Trent,* 33 F.3d at 225.

Because the Court here finds that the concurrently pending actions are neither duplicative nor parallel, it need not address these factors. The Court notes, however, that if these factors were to be weighed, the balance would nonetheless be tipped in favor of retaining federal jurisdiction. There has been no showing that the federal forum is an inconvenient one, and plaintiffs' rights could not be adequately protected in an action between Penn and Signet involving only the alleged breach of the Lease.

106 S.Ct. at 2509–10. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of demonstrating that there is an absence of genuine issues of material fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. If the moving party sustains this burden, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, *Fed. R.Civ.P.* 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor and not simply raise "some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355; *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. The mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment: there must be enough evidence to enable a jury to reasonably find for the nonmoving party on the issue. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Accordingly, it is the role of the court to ask whether the summary judgment record is sufficient such that a reasonable jury could find facts that demonstrate, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict. *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir.1990).

It is well established that a federal court sitting in diversity must apply the substantive law of the state whose law governs the action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Griggs v. BIC Corp.*, 981 F.2d 1429, 1431–32 (3d Cir.1992). Here, the substantive law of New Jersey applies to all claims in this litigation.[4]

*B. Signet's Motion for Summary Judgment*

**1. The Breach of Lease Claim**

Signet seeks summary judgment on Woods' breach of lease claim, arguing that pursuant to the Assignment, Woods was divested of any right, title, or interest in the Lease. Signet claims that an absolute assignment was made when the agreement was executed, thereby precluding Woods from holding any interest in the lease and depriving Woods of standing to raise its current claim for breach.

Woods argues that the Assignment was merely a collateral assignment, or an assignment for security: that it was an agreement through which Penn Mutual was given certain rights in the event that Woods defaulted on its obligations under the Mortgage. Woods alleges that under this agreement, it did not assign all of its interest under the lease. Instead, it assigned only its right to rent in the event of a default, and therefore, the assignment was not operative until such default. As a result, Woods argues that it still maintains an interest in the lease and therefore may maintain an action and recover under the lease.

In order to withstand Signet's summary judgment motion, Woods must point to evidence that establishes every element of its claim. The issue turns on whether the Assignment operated as an absolute assignment upon its execution or instead was merely a pledge for security, effecting only a future transfer of rights dependent upon a later default.

4. The Court notes that the Assignment provides at Paragraph 13 that it is governed by Maryland law and that it was delivered in and intended to be performed in the State of Maryland. The Mortgage provides that it was delivered in New Jersey and subject to New Jersey law. The parties do not cite any connection between Maryland, the Premises, the parties, or the loan, nor do they urge the Court to apply Maryland law to the claims involving the Assignment. In fact, Signet suggests that the choice of Maryland law appears to be a scrivener's error. The Court agrees with this characterization, and, without undertaking a complex conflicts of laws analysis, will apply New Jersey law to the entire transaction.

New Jersey law distinguishes between a pledge of rents for security and an assignment. *Stanton v. Metropolitan Lumber Co.*, 107 N.J.Eq. 345, 348, 152 A. 653 (Ch.1930). The distinction is important because a pledge for security creates a lien that does not entitle the mortgagee to any rents until possession, while an absolute assignment conveys immediate title to the mortgagee and permits collection of rents upon default. *Id.*

An assignment is absolute if its precise language demonstrates an intent to immediately transfer the assignor's rights and title. *In re Winslow Center Assocs.*, 50 B.R. 679, 681–82 (E.D.Pa.1985) (applying New Jersey law). Determining what language creates an absolute assignment rather than a pledge for security depends on the precise wording of the assignment. In *Winslow Center*, the Court applied New Jersey law to an assignment clause contained within a mortgage and stated that

> [i]f the pertinent clause gives the mortgagee a vested interest in rents at the time of creation of the mortgage, the clause is construed as an assignment. Who has actual or constructive possession of the rents is irrelevant. The applicable mortgage provision is deemed a pledge for security if the mortgagee's interest in the rents does not vest until the occurrence of some precipitating event such as default under the mortgage.

*Id.* Thus, if the language of the instrument of assignment demonstrates that Woods executed an absolute assignment of the lease to Penn Mutual, then Woods has been divested of all rights under the Lease and may not seek recovery for its breach.

The Assignment executed by Woods and Penn Mutual provided that

> [a]ssignor hereby conveys, transfers, assigns and sets over unto Assignee all of Assignor's rights, titles, interests and privileges in, to and under all leases now or hereafter in existence with respect to the Property or any portion thereof ... This Assignment includes:
>
> .    .    .    .    .
>
> a) all rents ...

> b) all security deposits made by any tenant; and
>
> c) any payments made by any tenant in lieu of rent.

Assignment, ¶ 1.

For guidance on the issue of whether this assignment was an absolute assignment transferring title or merely a pledge for security, the Court looks to a case decided recently by the Third Circuit. In *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir.1995), the court of appeals dealt with this precise issue in the context of a bankruptcy reorganization under Chapter 11. The facts in that case were similar to those before this Court: in the course of executing a promissory note, the mortgagor simultaneously executed a mortgage and an assignment of leases to the holder of the note. The mortgagor defaulted on the note, and the assignee began collecting rents from the lessee. The issue decided by the Third Circuit was whether those rents were property of the bankruptcy estate, i.e., whether the mortgagor had any interest in them following default.

Looking to New Jersey law, the court examined the language of the assignment and concluded that, notwithstanding its role as part of a financing transaction and as additional security for repayment of the note, the assignment was an absolute assignment that had transferred title to the assignee upon execution. *Jason Realty*, 59 F.3d at 428–29.

In support of its claim that the assignment was one for security only, the assignor in *Jason Realty* argued many of the same points urged by Woods in support of its position. As is the case here, the assignment in *Jason Realty* was part of a financing agreement, was made expressly for the purpose of securing the payment of the principal and interest under a note and mortgage, and was to be null and void upon payment of the debt. Further, the rights and liabilities in the assignment were set forth "in the event that [the assignee] acquired title," indicating a future contingency.

The Third Circuit, however, found these facts to be nondispositive of the issue. Instead, the court relied heavily on the fact that, as is the case here, the assignment was

contained in an agreement separate from the mortgage. *Id.* The court further noted that under New Jersey law an assignment may have conditions. Specifically, New Jersey law permits an absolute assignment to be conditioned upon the default of a mortgage. In such a case, the conditional assignment would become absolute upon default of the mortgage debt. The court found that the parties had executed an absolute assignment of title, conditioned upon the default of the mortgage, with the assignor receiving a license to collect the rents. Thus, the assignor had no interest in the rents collected following its default on the mortgage. *Id.*

Similarly, the Assignment executed by Woods and Penn Mutual evidences an absolute assignment of the Lease and the rents, with Woods receiving nothing more than a license to collect the rents and a reversion interest should the note be completely repaid. The language of the Assignment unambiguously expressed an agreement to assign present title, while explicitly creating for Woods a license to collect the rents. Relying on *Jason Realty*, the Court finds that this instrument was an absolute assignment of the Signet lease and the rents due under it. Woods, therefore, lost its rights and interest in those rents upon execution of the assignment and may not now seek their recovery through a breach of lease claim against Signet. The only party in interest with a right to those rents is Penn Mutual, which currently seeks such recovery in a separate suit in New Jersey state court.

Woods further argues that the Assignment did not serve to automatically relieve it of its role as landlord under its lease with Signet, even upon default. For instance, Wood points to language in the Assignment that directed Woods to continue to perform its duties as landlord under the lease following the Assignment and relieved Penn Mutual from performing any duties under the Lease.[5] Woods argues that these provision evince an assignment of the rents as collateral rather than a transfer of title from Woods to Penn Mutual. The Court takes note of this language in the Assignment, but will nonetheless follow the Third Circuit's holding that an assignment of rents is "quintessentially absolute" where the instrument conveyed, transferred, and assigned to the mortgagee the lessor's rights, titles, and interests in and to leases, together with all rents. *Jason Realty*, 59 F.3d at 427.

Because the Assignment transferred all of Woods' title to and interest in the Lease to Penn Mutual, Woods is unable to maintain an action against Signet for breach of the Lease.[6] Accordingly, the Court will grant summary judgment to Signet on Count One of the complaint.

## 2. The Tortious Interference Claim

Signet also seeks summary judgment on Damon Douglas' and GRC's claim that by vacating the Lease, Signet tortiously interfered with the contracts and economic relationships between Damon Douglas and GRC and Woods. In the Complaint, Damon Douglas and GRC allege that Signet breached the Lease knowing that its actions would not only extinguish Damon Douglas' interest in the property, thereby terminating its ground lease with Woods, but also destroy GRC's management contract with Woods. Damon Douglas and GRC further allege that they were damaged because they were to have been third-party beneficiaries to the loan restructuring deal that was never performed because of Signet's alleged breach of the Lease.

In support of its summary judgment motion, Signet argues that because neither GRC nor Damon Douglas were parties to the Let-

---

5. Specifically, the Assignment states at Paragraph 4 that "Assignor agrees that Assignor will perform all of its obligations as landlord under the leases and enforce the performance by the tenants of all of their respective obligations under the leases," and at Paragraph 5 that "Assignee shall not be obligated by reason of its acceptance of this Assignment to perform any obligation of Assignor as landlord under the leases...."

6. The Court further notes that Woods has pointed to no evidence that tends to prove that Signet acted maliciously or in reckless disregard of the harm it would cause by vacating the Premises. The Court, however, need not reach this issue since it finds, as a matter of law, that Woods may not maintain a claim against Signet for breach of the Lease.

ters of Intent, they may not claim any injury as a result of the failure of the letters to be executed. Essentially, Signet argues that no prospective economic or contractual relationship existed with which it could have interfered by vacating the Premises because neither Damon Douglas nor GRC were privies to the Letters of Intent. Signet also argues that plaintiffs have pointed to no facts that support their allegation that Signet vacated the Premises with the requisite intent or malice to tortiously injure GRC and Damon Douglas and their relationship with Woods.

■ Damon Douglas and GRC claim that they were injured by Signet's act of vacating the Premises because the proposed loan restructuring between Penn Mutual and Woods, as evidenced by the Letters of Intent, was never realized. In order to prove tortious interference with a contract, however, there must be an existing contract. *Norwood Easthill Assocs. v. Norwood Easthill Watch,* 222 N.J.Super. 378, 383, 536 A.2d 1317 (App.Div.1988). The parties agree that the Letters of Intent did not constitute a contract, and therefore the Court will construe Damon Douglas' and GRC's claims in this regard as those for tortious interference with a prospective economic relationship.[7] The Court will treat the claims relating to Signet's alleged interference with Damon Douglas' ground lease and GRC's management contract, however, as claims for tortious interference with existing contracts.

■ To establish a *prima facie* case of tortious interference, New Jersey law requires a plaintiff to demonstrate that it was in pursuit of some "reasonable expectation of economic advantage" with which the defendant knowingly interfered. *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 186 (3d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993); *Sgro v. Getty Petroleum Corp.,* 854 F.Supp. 1164, 1183 (D.N.J.1994); *Harris v. Perl,* 41 N.J. 455, 461–61, 197 A.2d 359 (1964). Second,

the plaintiff must prove a reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of the defendant's interference. *Fineman,* 980 F.2d at 190; *Sgro,* 854 F.Supp. at 1183 (citing *Leslie Blau Co. v. Alfieri,* 157 N.J.Super. 173, 185–86, 384 A.2d 859 (App. Div.), *certif. denied,* 77 N.J. 510, 391 A.2d 523 (1978)). To establish tortious interference with an existing contract, a plaintiff must demonstrate an existing contractual relationship and the intentional interference with that relationship. *Norwood Easthill Assocs.,* 222 N.J.Super. at 384, 536 A.2d at 1320. Both of these torts require the plaintiff to prove that the defendant's interference was intentional and malicious. *Fineman,* 980 F.2d at 190; *Printing Mart–Morristown v. Sharp Elec. Corp.,* 116 N.J. 739, 751, 563 A.2d 31 (1989).

In this setting, "'malice is not used in the literal sense requiring ill will toward the plaintiff.'" *Harris,* 41 N.J. at 461–62, 197 A.2d 359 (quoting *Restatement (Second) of Torts* § 37 at 5 (1979)). Instead, malice is defined as "the intentional doing of a wrongful act without justification or excuse." *SGRO,* 854 F.Supp. at 1183; *Raymond v. Cregar,* 38 N.J. 472, 480, 185 A.2d 856 (1962) (citing *Louis Schlesinger Co. v. Rice,* 4 N.J. 169, 181, 72 A.2d 197 (1950)). To show "malice," the plaintiff must show that the defendant's conduct was "'transgressive of generally accepted standards of morality'; that is, a violation of standards of 'socially acceptable conduct.'" *Baldasarre v. Butler,* 254 N.J.Super. 502, 526, 604 A.2d 112 (App.Div. 1992), *aff'd in relevant part, rev'd in part,* 132 N.J. 278, 625 A.2d 458 (1993) (quoting *Leslie Blau Co. v. Alfieri,* 157 N.J.Super. 173, 189, 384 A.2d 859 (App.Div.), *certif. denied,* 77 N.J. 510, 391 A.2d 523 (1978)). New Jersey courts interpret this so that the inquiry becomes whether the defendant's interference was "sanctioned by the 'rules of the game.'" *Printing Mart,* 116 N.J. at 757, 563

7. With regard to this claim only, the Court notes that neither Damon Douglas nor GRC were parties to the economic relationship with which they allege Signet interfered—the relationship between Woods and Penn. New Jersey courts, to date, have not addressed whether plaintiffs may recover for tortious interference if they are not parties to the contract or economic relationship that the defendant allegedly disrupted. The Court does not reach this issue and assumes, *arguendo,* that New Jersey courts would entertain such an action. Nonetheless, the claim cannot withstand Signet's motion under the facts before the Court.

A.2d at 40 (quoting *Sustick v. Slatina,* 48 N.J.Super. 134, 144, 137 A.2d 54 (App.Div. 1957)).

■ Interpreting New Jersey law, the federal courts in this circuit require a plaintiff seeking to recover for tortious interference to show that the defendant specifically intended to interfere with that particular plaintiff. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1170 (3d Cir.1993); *Fineman v. Armstrong World Indus.,* 774 F.Supp. 225, 250–51 (D.N.J.1991), *aff'd in part, rev'd in part on other grounds,* 980 F.2d 171 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). *See Restatement (Second) of Torts* § 766, comment p ("[t]o subject the actor to liability under this rule, his conduct must be intended to affect the contract of a specific person"). Thus, in order to maintain a claim under this tort, Damon Douglas and GRC must prove that Signet breached the Lease and vacated the Premises—thereby preventing a renegotiation of the loan—for the specific purpose of interfering with their contracts with Woods and preventing them from realizing an economic gain from the completion of the deal.

■ Assuming, *arguendo,* that Signet breached the Lease, Damon Douglas and GRC have neither alleged nor set forth any facts tending to show that Signet did so intentionally and maliciously in order to affect their contracts and relationships with Woods. The Court's obligation is to ascertain whether the plaintiffs have offered sufficient "affirmative" and "concrete evidence" to defeat Signet's summary judgment motion, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and it finds that they have not. Damon Douglas and GRC have failed to demonstrate, either directly or by permissible inference, that by vacating the Premises and allegedly breaching the Lease, Signet specifically intended to injure them and interfere with their relationship with Woods. Thus, the Court will grant Signet's motion for summary judgment on Count II of the complaint.

### C. *Penn Mutual's Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, for Summary Judgment*

■ Accepting the facts in the pleadings as true and giving them all reasonable inferences, a court must dismiss under Federal Rule of Civil Procedure 12(b)(6) "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation.'" *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). A court may not grant a 12(b)(6) motion "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Ordinarily, when a Court relies upon matters outside of the pleadings in deciding a motion to dismiss, it may convert the motion into one for summary judgment, pursuant to Federal Rule of Civil Procedure 12(c). *Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264, 1275 (D.N.J.1990). Because the Court has examined the exhibits and documents accompanying these motions, it will treat Penn Mutual's motions as summary judgment motions.

### 1. The Negligence Claim

Each of the three plaintiffs in this case alleges that Penn Mutual was negligent in its attempt to dispossess Signet from the Premises by naming it in the state foreclosure action. Plaintiffs do not dispute that Penn Mutual, as the mortgagee, had the contractual right to name Signet to the foreclosure action. They contend, however, that although Penn Mutual had such a right, it should not have exercised it. Count III of the Complaint alleges that Penn Mutual was negligent for doing so while at the same time requiring Signet's possession of the premises as part of the loan restructuring agreement with Woods.

■ It is a well established principle of tort law that a plaintiff seeking to recover under a negligence theory must show that the defendant owed the plaintiff a duty to act or not to act. *Kelly v. Gwinnell,* 96 N.J. 538, 544, 476 A.2d 1219 (1984). If the breach of

this duty is the proximate cause of the injury at issue, then the defendant will be found to have acted negligently. *Harrah v. Minnesota Mining & Mfg. Co.*, 809 F.Supp. 313, 318 (D.N.J.1992) (citing *Prosser and Keeton on Torts,* Ch. 5, § 30 at 164 (5th ed. 1984)). Further, the issue of whether a duty exists to support a negligence claim is an issue of law for the court to decide. *Rustay v. Consolidated Rail Corp.*, 775 F.Supp. 161, 163 (D.N.J.1991); *Wang v. Allstate Ins. Co.*, 125 N.J. 2, 15, 592 A.2d 527 (1991).

█ In support of their negligence claim, plaintiffs offer an abundance of legal arguments and case law allegedly supporting the proposition that a mortgagee owes a duty not to impair the collateral that secures a debt. The Court notes, however, that the cases relied upon by plaintiffs fail to address the factual scenario presented here. Instead, plaintiffs rely upon cases that do not involve debtor-creditor rights, but instead involve such issues as the rights of guarantors in deficiency actions. The Court finds plaintiffs arguments to be unpersuasive.

In the event of default, Penn Mutual clearly had a right under the loan documents to take whatever action it deemed appropriate to enforce its security interest in the Premises. This included the right to "institute and maintain an action of mortgage foreclosure," to "sell and cause to be sold any of the Mortgaged Premises at public sale," and to "take such other action at law or in equity for the enforcement of any loan document as the law may allow." Under the Mortgage, Penn Mutual similarly had the right to take appropriate action with respect to the Lease, including the performance of "any acts which Mortgagee deems proper to protect the security of [the] Mortgage."

Also, the Court agrees with Judge Diana's Opinion in the foreclosure action that Penn Mutual acted prudently in its decision to join Signet as a defendant. As Judge Diana stated, "it is sound practice for a plaintiff mortgagee to join in its foreclosure action 'all persons who may have any possible interest which may affect the value of the land so that their interests may be extinguished by the foreclosure sale.'"[8] *See The Penn Mutual Life Insurance Co. v. Woods Corporate Plaza,* Docket No. F–2280–93, Transcript of Judge's Decision (quoting Cunningham and Tischler, 30 *New Jersey Practice* § 221 Law of Mortgages at 80 (1975 and 1994 Cumm Supp.)).

Most importantly, the Court finds as a matter of law that Penn Mutual owed no duty to Woods, Damon Douglas, or GRC not to join Signet as a party in the New Jersey foreclosure action. Plaintiffs' claims that the mortgagee owed them a duty has no support in the case law. Instead, New Jersey courts have held that the implied duty of good faith and fair dealing may not be extended to "preclude a creditor from exercising its bargained-for rights under a loan agreement." *Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J.Super. 163, 175–79, 647 A.2d 852 (App. Div.1994), *certif. denied*, 139 N.J. 442, 655 A.2d 444 (1995). Thus Penn Mutual's exercise of its own contractual rights may not be held to be a breach of some implied duty owed to the mortgagor.

Further, the Third Circuit has stated that debtor-creditor relationships are rarely found to give rise to a duty on the part of the creditor. *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir.1988). The Court heeds the advice of the court in *Paradise Hotel* that it "'would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table,'" given the parties' essentially adversarial positions. *Paradise Hotel Corp.*, 842 F.2d at 53 (quoting *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *see also Globe Motor Car v. First*

**8.** This is especially true given the effect of the Assignment: once Woods defaulted on the loan, the Assignment became absolute, leaving Penn Mutual in the position of the lessor with every right to name Signet, its lessee, in the action of foreclosure. Plaintiffs argue that by naming Signet in the foreclosure suit, Penn Mutual "usurped Woods' position and deprived Woods of its opportunity to benefit by Signet's above-market lease." Woods, however, had no position to be usurped, since by virtue of its default, its conditional Assignment of the Lease to Penn Mutual became absolute. It therefore had no remaining interest in or title to the above-market rents being paid by Signet.

*Fidelity,* 273 N.J.Super. 388, 393, 641 A.2d 1136 (Law Div.1993).

The Complaint alleges no facts giving rise to a duty, much less a fiduciary duty owed by Penn Mutual, and without such a duty, Woods, Damon Douglas, and GRC may not maintain an action in negligence against Penn Mutual. *Bradshaw v. Rawlings,* 612 F.2d 135 (3d Cir.1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). Accordingly, the negligence claim must fail, and the Court will grant summary judgment to Penn Mutual on Count III of the Complaint.

## 2. The Breach of Oral Agreements & Bad Faith Claims

■■■ The final Count in the Complaint asserts a claim against Penn Mutual for breach of its oral promises to modify the loan documents and for bad faith in connection with its conduct during the course of the negotiations. Where, as here, the non-movant bears the burden of proof on the issue that is the subject of the summary judgment motion and is confronted with the movant's argument that the established facts do not support the claim, the party must identify evidence in the record sufficient to establish every element essential to the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■■■ New Jersey courts clearly hold that every contract contains an implied covenant of good faith and fair dealing. *Association Group Life, Inc. v. Catholic War Veterans,* 61 N.J. 150, 153, 293 A.2d 382 (1972); *Noye v. Hoffmann–LaRoche Inc.,* 238 N.J.Super. 430, 432, 570 A.2d 12 (App.Div.), *certif. denied,* 122 N.J. 146, 584 A.2d 218 (1990). The covenant provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Palisades Properties, Inc. v. Brunetti,* 44 N.J. 117, 130, 207 A.2d 522 (1965). The New Jersey Supreme Court has found that the covenant could be breached even when the defendant's acts "did not literally violate" the agreement in issue, *Catholic War Veterans,* 61 N.J. at 153, 293 A.2d 382, if a party to the contract engaged in some

behavior "not contemplated by the spirit of the contract and [that] fell short of fair dealing." *Id.*

By refusing to execute an agreement to renegotiate the loan, Penn Mutual did nothing more than exercise its contractual rights to protect its interest in the security. As stated by the court in *Glenfed,* a creditor's clear duty to act in good faith does not encompass "compromising its contractual rights in order to aid its debtor." 276 N.J.Super. at 175–79, 647 A.2d 852. Penn Mutual had no obligation to agree to a loan modification, and its failure to do so cannot be said to be "bad faith." *National Community Bank v. G.L.. Indus., Inc.,* 276 N.J.Super. 1, 4, 647 A.2d 157 (1994).

Plaintiffs have failed to point to any facts that demonstrate that Penn Mutual breached its duty of good faith by exercising its contractual right to join Signet as a party in the foreclosure action. Nor have plaintiffs presented evidence tending to show that Penn Mutual's decision not to complete the proposed restructuring deal fell short of fair dealing. Woods, Damon Douglas, and GRC have failed to meet their burden of setting forth facts sufficient to support their claims of bad faith. Accordingly, the Court will grant summary judgment to Penn Mutual on Count IV of the Complaint.

## CONCLUSION

For the reasons stated above, the Court grants the motions of defendants Signet and Penn Mutual for summary judgment on all counts of the Complaint.

## ORDER

Presently before the Court are the motions of defendants Signet Star Holdings, Inc. and Penn Mutual Life Insurance Company for summary judgment and the cross-motion of plaintiffs Woods Corporate Associates, Damon G. Douglas, and GRC Management Company to abstain from exercising its jurisdiction and remand this action to state court. On May 16, 1995, the parties consented to the jurisdiction of the undersigned to decide these dispositive motions, pursuant to 28 U.S.C. § 636(c)(1).

The Court did not hear oral argument and has decided these motions based upon the written submissions of the parties, pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated in the accompanying Opinion, and for good cause having been shown,

**IT IS** on this 21st day of December, 1995,

**ORDERED**

1) that plaintiffs' motion to abstain or remand is DENIED; and

2) that the motions of defendants Signet Star Holdings, Inc. and Penn Mutual Life Insurance Company for summary judgment are **GRANTED.**