**RODIN PROPERTIES–SHORE MALL, N.V., Plaintiff,**

v.

**CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., Cushman & Wakefield, Inc., and Neal Rodin, Defendants.**

**Neal Rodin, Third–Party Plaintiff,**

v.

**ABN AMRO Bank, N.V., ABN AMRO Holding, N.V., Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., and Centraal Beheer Pensioenverzekering, N.V., Third–Party Defendants.**

**Neal Rodin, Counterclaim Plaintiff,**

v.

**Rodin Properties–Shore Mall, N.V., Counterclaim Defendant.**

**Cushman & Wakefield of Pennsylvania, Inc., and Cushman & Wakefield, Inc., Crossclaim Plaintiffs,**

v.

**Neal Rodin, Crossclaim Defendant.**

**Cushman & Wakefield Of Pennsylvania, Inc., and Cushman & Wakefield, Inc., Third–Party Plaintiffs,**

v.

**Shore Mall Associates, L.P., R.K. Realty, Two Associates, L.P., Leo Ullman, and Reid & Priest LLP, Third–Party Defendants.**

**Shore Mall Associates, L.P., Counterclaim Plaintiff,**

v.

**Cushman & Wakefield of Pennsylvania, Inc., Counterclaim Defendant.**

**Shore Mall Associates, L.P., Crossclaim Plaintiff,**

v.

**ABN AMRO Bank, N.V., ABN AMRO Holding, N.V., Stichting Bedrijfspen-**

sioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., and Centraal Beheer Pensioenverzekering, N.V., Crossclaim Defendants.

Shore Mall Associates, L.P.,
Rule 14(a) Plaintiff,

v.

Rodin Properties–Shore Mall, N.V.,
Rule 14(a) Defendant.

No. CIV. A. 95–6541 (SSB).

United States District Court,
D. New Jersey.

May 5, 1999.

Mark McMenamy, Bressler, Amery & Ross, P.C., Morristown, NJ, and Robert C. Sentner, Nixon, Hargrave, Devans & Doyle, New York City, for Plaintiff Rodin Properties–Shore Mall, N.V.

Thomas D. Ruane, St. John & Wayne, L.L.C., East Newark, NJ, for Defendant Cushman & Wakefield of Pennsylvania, Inc.

Cozen & O'Connor, Newark, NJ, and Michael Minsker, Charlotte, NC, for Defendant Cushman & Wakefield, Inc.

Diana Vondra Carrig, Pepper, Hamilton & Scheetz LLP, Cherry Hill, NJ, and Barbara W. Mather, Pepper, Hamilton & Scheetz LLP, Philadelphia, PA, for Defendant Neal Rodin.

Frederick Lee Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Third–Party Defendants ABN AMBRO Bank, N.V., ABN AMBRO Holding, N.V., Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., Centaal Beheer Pensioenverzekering, N.V.

Barbara Mather, Pepper Hamilton & Scheetz LLP, Philadelphia, PA, for Third–Party Defendant Shore Mall Associates, L.P.

## OPINION ON CHOICE-OF-LAW ISSUES ARISING OUT OF MOTIONS TO DISMISS

## OPINIONS ON MOTIONS TO DISMISS

BROTMAN, District Judge.

Presently before the Court are the following motions: (1) motion of Rodin Properties–Shore Mall, N.V. ("N.V.") and N.V.'s shareholders, specifically Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V., and Centraal Beheer Pensioenverzekering N.V. (collectively "N.V.'s shareholders"), to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of defendant Neal Rodin ("Rodin") and the Rule 14 Claim and Crossclaim of third-party defendant Shore Mall Associates ("SMA"); and (2) motion of ABN AMRO Bank N.V. ("ABN Bank") and ABN AMRO Holding N.V. ("ABN Holding") (collectively "AAB") to dismiss, or in the alternative to sever, defendant Rodin's Amended Third–Party Complaint and third-party defendant SMA's Crossclaim.

## I. FACT BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are fully described in the Court's January 27, 1999 opinion regarding the above-referenced motions.[1] In that opinion and an order of the same date, the Court took the following actions: (1) granted the motion of Thelen Reid and Ullman with regard to Count Four and denied it with regard to Counts One

---

1. The Court's January 27, 1999 opinion and order also addressed the motion of Thelen Reid & Priest LLP ("Thelen Reid"), successor to third-party defendant Reid & Priest LLP ("Reid"), and third-party defendant Leo Ullman ("Ullman") to dismiss, or in the alternative to sever, the Third–Party Complaints of defendants Cushman & Wakefield of Pennsylvania, Inc. and Cushman & Wakefield, Inc. (collectively "Cushman & Wakefield").

through Three; (2) denied the motion of N.V. and N.V.'s shareholders to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of Rodin and the Rule 14 Claim and Crossclaim of SMA and the motion of AAB to dismiss, or in the alternative to sever, Rodin's Amended Third–Party Complaint and SMA's Crossclaim on all grounds except those which allege that Rodin and SMA have failed to state a claim on which relief may be granted; (3) ordered N.V., N.V.'s shareholders, AAB, Rodin, and SMA to brief the choice-of-law issues raised by the motions filed by N.V., N.V.'s shareholders, and AAB; and (4) reserved judgment on whether to dismiss the claims raised in SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party Complaint based on failure to state a claim until the Court could resolve the question of which law to apply to the claims.

In their motions to dismiss, N.V., N.V.'s shareholders, and AAB assume that New Jersey law governs SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party Complaint. In the briefs submitted to the Court pursuant to its January 27, 1999 order, N.V., N.V.'s shareholders, AAB, Rodin, and SMA all agree that New Jersey law applies to SMA's Rule 14 Claim in its entirety and SMA's Crossclaim for tortious interference with contractual relationship and intentional interference with expectation of economic benefit or advantage. The parties dispute whether New Jersey or Dutch law is applicable to SMA's Crossclaim for contribution and Rodin's Third–Party Complaint for contribution.

## II. DISCUSSION

### A. TORT CLAIMS

#### 1. Choice–of–Law Standard

In a diversity case, a federal court determines the substantive law to apply by looking to the forum state's choice-of-law rules. *See McFarland v. Miller,* 14 F.3d 912, 917 (3d Cir.1994). New Jersey employs a governmental inter-est analysis for tort claims, applying the law of the jurisdiction with the greatest interest in the claims asserted. *See Veazey v. Doremus,* 103 N.J. 244, 248, 510 A.2d 1187, 1189 (1986).

The initial step in this analysis is to determine whether a conflict exists between the law of the interested jurisdictions. *See id.* If an actual conflict extists, the Court must then identify the policies underlying the law of each jurisdiction and determine how those policies are affected by each jurisdiction's contacts to the litigation and to the parties. *See id.* The contacts to be considered include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicil, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See* Restatement (Second) Conflict of Laws § 145 (1969). If a jurisdiction's contacts are not related to the policies underlying its law, then that jurisdiction does not maintain an interest in the application of its law. It is the qualitative, rather than the quantitative, nature of a jurisdiction's contacts that ultimately determines whether its law should govern. The law "of the state with the greatest interest in governing the particular issue" controls. *D'Agostino v. Johnson & Johnson,* 133 N.J. 516, 526, 628 A.2d 305, 310 (1993).

The Court finds that a conflict exists between Dutch and New Jersey law with regard to SMA's claims for tortious interference with contract and with prospective economic benefit, Dutch law being more general than New Jersey law. *See Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.,* 870 F.Supp. 1237, 1247 (D.N.J.), *aff'd,* 85 F.3d 612 (3d Cir.1996) ("To establish [a claim for tortious interference with contract or prospective economic advantage under New Jersey law] a plaintiff must prove: (1) an existing contractual relationship; (2) intentional interference

with that relationship; (3) the malicious nature of the interference; and (4) damages resulting from the interference."); *Rodin Properties—Shore Mall N.V. v. Cushman & Wakefield of Pennsylvania, Inc., Cushman & Wakefield, Inc. and Neal Rodin,* Civil Action No. 95–6541, at 8, 12 (June 17, 1998) ("Liability for damages under a[ ] [Dutch law] civil wrong claim requires that Plaintiff allege and prove the following elements: (1) an unlawful act; (2) fault; (3) causation; and (4) damages".... "Netherlands law does not require a showing of intent to state an unlawful act claim."). It is therefore necessary for the Court to assess each jurisdiction's contacts with the litigation and the parties.

### 2. Choosing the Law Applicable to SMA'S Rule 14 Claim and Crossclaim for Tortious Interference with Contractual Relationship and Intentional Interference with Expectation of Economic Benefit or Advantage

In SMA's Rule 14 Claim, SMA alleges that N.V.—as a joint venturer in the Shore Mall enterprise—breached the duty of good faith and fair dealing it owed to SMA by attempting to take control of the Shore Mall between 1993 and 1995, thereby decreasing its value. *See* SMA's Rule 14 Claim, ¶¶ 3–6. In SMA's Crossclaim for tortious interference with contractual relationship, SMA alleges that the Dutch Investors [2] tortiously interfered with the contractual relationship existing between SMA and N.V. by denying SMA the opportunity to develop the Shore Mall. *See* SMA's Crossclaim, ¶¶ 81–84. In SMA's Crossclaim for intentional interference with expectation of economic benefit or advantage, SMA alleges that the Dutch Investors intentionally interfered with the economic benefit it reasonably expected to achieve through its relationship with N.V. by denying SMA the opportunity to develop the Shore Mall. *See id.,* ¶¶ 86–89.

The parties agree that New Jersey law governs SMA's Rule 14 Claim against N.V. and Crossclaim against the Dutch Investors for interference with contract and economic advantage. The Court reaches the same conclusion. The injury which SMA complains of is harm to the value of the Shore Mall; this injury occurred in New Jersey. The conduct causing the injury could have occurred in Holland, New Jersey, or elsewhere. SMA's pleadings do not identify where the Dutch Investors allegedly caused N.V. to reject its proposals for the expansion and improvement of the Shore Mall or where N.V. allegedly did so. SMA is a New Jersey limited partnership; N.V. is a Dutch Corporation; the Dutch Investors are Dutch legal entities. This factor therefore does not favor the application of either jurisdiction's law. It is not clear whether the relationship between SMA and N.V. and between SMA and the Dutch Investors is centered in Holland or in New Jersey. However, the property which provides the basis for the relationship between these parties is located in New Jersey, a fact which suggests that New Jersey is also the center of the parties' relationship. The sum of these factors weighs in favor of applying New Jersey law to SMA's tort claims against N.V. and the Dutch Investors.

### 3. Motions to Dismiss SMA's Rule 14 Claim and Crossclaim

#### a. Standard for Dismissal

In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the

---

**2.** As the Court's January 27, 1999 opinion explains, N.V. was incorporated by a number of Dutch investors for the purpose of providing a loan to SMA. The investors include third-party defendants Stichting Bedreijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V. and Centraal Beheer Pensioenverzekering N.V., as well as third-party defendant AAB who underwrote the initial public offering of N.V.'s shares and retained approximately 40 percent thereof. Collectively, these third-party defendants will be referred to as the "Dutch Investors."

Court must consider only those facts alleged in the complaint and accept all of the allegations as true. *See ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3rd Cir.1994). The Court cannot dismiss a plaintiff's complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). While the rules do not dictate that a claim set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Schanzer v. Rutgers Univ.,* 934 F.Supp. 669, 673 (D.N.J.1996).

**b. SMA's Rule 14 Claim Against N.V.**

The first count of SMA's Rule 14 Claim against N.V. contains an allegation of lender liability; SMA alleges that N.V. had a duty to act in good faith with respect to the Shore Mall property and that N.V. breached this duty by attempting to take over the Shore Mall. *See* SMA's Rule 14 Claim, ¶¶ 3–5. N.V. claims that its actions with regard to the Shore Mall were consistent with its rights under the Mortgage and that it therefore did not breach its duty to act in good faith. *See* Memorandum of Law in Support of N.V. and N.V.'s Shareholders' Motion to Dismiss at 10.

 New Jersey's law regarding the duty of good faith and fair dealing has been articulated by this Court as follows:

New Jersey courts clearly hold that every contract contains an implied covenant of good faith and fair dealing. *Association Group Life, Inc. v. Catholic War Veterans,* 61 N.J. 150, 153, 293 A.2d 382 (1972); *Noye v. Hoffmann–LaRoche Inc.,* 238 N.J.Super. 430, 432, 570 A.2d 12 (App.Div.), certif. denied, 122 N.J. 146, 584 A.2d 218 (1990). The covenant provides that "neither party shall do anything which will have the effect of

destroying or injuring the right of the other party to receive the fruits of the contract." *Palisades Properties, Inc. v. Brunetti,* 44 N.J. 117, 130, 207 A.2d 522 (1965). The New Jersey Supreme Court has found that the covenant could be breached even when the defendant's acts "did not literally violate" the agreement in issue, Catholic War Veterans, 61 N.J. at 153, 293 A.2d 382, if a party to the contract engaged in some behavior "not contemplated by the spirit of the contract and [that] fell short of fair dealing." *Id.*

*Woods Corporate Associates v. Signet Star Holdings, Inc.,* 910 F.Supp. 1019, 1034 (D.N.J.1995). The *Woods* Court also pointed out, however, that "a creditor's clear duty to act in good faith does not encompass 'compromising its contractual rights in order to aid its debtor.'" *Id.* (finding that where a creditor had no obligation to agree to a loan modification, its failure to do so did not constitute bad faith). This language indicates that the duty to act in good faith and deal fairly cannot force a party to a contract to act in a manner the contract does not require; at the same time, this duty does not give a party to a contract leave to act in a way which violates the spirit—though not the letter—of the agreement.

 SMA alleges that N.V. violated the spirit of the Mortgage executed by and between these parties by, among other things, "[i]mpeding, rejecting, and frustrating efforts to develop or sell the Shore Mall property." SMA's Rule 14 Claim, ¶ 5(c). Specifically, SMA alleges as follows:

In 1993, 1994, and 1995, SMA presented a number of plans and made a number of efforts to improve and expand the Shore Mall property and to retain and/or secure new and superior tenants in an effort to increase the revenues from and value of the property.... Pursuant to the rights of control that had been granted to it in the Loan Doc-

uments and through the parties' course of dealings, Rodin Properties rejected these proposals and impeded these efforts. As a result, the revenues from and value of the Shore Mall property continued to be depressed and SMA was prevented from preserving the value of its investment. This was a direct and intended result of the plan by ABN, the other Dutch Institutional Investors, and Rodin Properties to depress the value of the Shore Mall property and turn the proceeds over to Rodin Properties. SMA Crossclaim, ¶ 66. SMA concedes that N.V. had the right to reject SMA's improvement and expansion proposals. Its argument is that such rejections violated the spirit of the Mortgage because they were "undertaken deliberately and with the dishonest purpose of depressing the value of the Shore Mall property to force SMA to sell the property to Rodin Properties or sell the Shore Mall property and turn the proceeds over to Rodin Properties." SMA's Rule 14 Claim, ¶ 6. SMA's allegations suggest unfair dealing on N.V.'s part.

The Court will deny N.V.'s motion to dismiss SMA's Rule 14 Claim. Under New Jersey law, a party to a contract can breach the duty of good faith by violating only the spirit of the contract, though not its letter, if the violation constitutes unfair dealing. The Court finds that SMA's Rule 14 Claim is consistent with this rule of law.

The second count of SMA's Rule 14 Claim alleges that the Shore Mall investment constituted a joint venture between SMA and N.V. and that N.V. breached the fiduciary duties it owed SMA as a joint venturer by failing to act in good faith and by causing harm to the value of the Shore Mall property. *See* SMA's Rule 14 Claim, ¶¶ 9, 14. N.V. claims that the Shore Mall investment did not constitute a joint venture. *See* Memorandum of Law in Support of N.V. and N.V.'s Shareholders' Motion to Dismiss at 15.

■ A joint venture is predicated on an agreement between two or more parties which may be explicit or implied from the acts and conduct of the parties. *See Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1026–27 (D.N.J.1995). A joint venture agreement will contain some or all of the following elements:

(A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;

(B) A joint property interest in the subject matter of the venture;

(C) A right of mutual control of management of the enterprise;

(D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;

(E) A right to participate in the profits;

(F) Most usually, limitation of the objective to a single undertaking or Ad hoc enterprise.

*Id.* at 1027 (quoting *Wittner v. Metzger*, 72 N.J.Super. 438, 444, 178 A.2d 671, 675 (App.Div.), *cert. denied*, 37 N.J. 228, 181 A.2d 12 (1962)).

■ The Court finds that SMA has pled a sufficient number of these elements to state a claim based on the existence of a joint venture. N.V. contributed $49.125 million to the Shore Mall venture while SMA contributed its management efforts. *See* SMA's Crossclaim, ¶ 42. SMA exercised some control over the management of the Shore Mall enterprise; it had the right to approve certain leases and the cancellation of certain leases; it had the right to approve alterations and assignments. While SMA certainly had more management responsibilities than N.V., this situation does not preclude the existence of a joint venture. *See* 46 Am.Jur.2d Joint Ventures § 16 (1994) ("[A] joint venture may exist although the parties have unequal control of operations."). N.V. will share in the profits from the venture, earning 50 percent of the gain in the value of the Shore Mall property. *See* SMA Crossclaim, ¶ 42. Although N.V. will not share in the venture's losses, this too does not

preclude the existence of a joint venture. *See First Mechanics Bank of Trenton, N.J. v. Comm'r of Internal Revenue,* 91 F.2d 275, 278 (3d Cir.1937).

 Joint venturers owe a fiduciary duty toward one another. *See Lo Bosco,* 891 F.Supp. at 1033. Because of this duty and because SMA has stated a claim regarding the existence of a joint venture, the Court will deny N.V.'s motion to dismiss the second count of SMA's Rule 14 Claim against N.V.

### c. SMA's Crossclaim Against the Dutch Investors

In its Crossclaim against the Dutch Investors, SMA claims that the Dutch Investors tortiously interfered with SMA's contract with N.V. *See* SMA's Crossclaim, ¶¶ 81, 83. SMA also claims that the Dutch Investors intentionally interfered with the economic benefit SMA expected to achieve through its relationship with N.V. *See id.,* ¶ 88.

 The Court finds that SMA's claim for intentional interference with economic benefit is duplicitous of its claim for tortious interference with contract. It is SMA's "relationship" with N.V. which forms the basis for both of these claims. *See* SMA's Crossclaim, ¶ 83 ("ABN and the other Dutch Institutional Investors intentionally, wrongfully, and tortiously interfered with the contractual relationship between SMA and Rodin Properties."); SMA's Crossclaim, ¶ 88 ("ABN and the other Dutch Institutional Investors intentionally, wrongfully, and tortiously interfered with SMA's reasonable expectation of achieving economic benefits or advantages through its relationship with Rodin Properties."). Because this relationship is contractual in nature, the prospective economic benefits SMA would have received from its relationship with N.V. are the same as the contractual benefits it would have received from this relationship. Because SMA's claim for interference with economic benefit is duplicitous of its claim

for intentional interference with contract, the Court will dismiss the former claim. *See, e.g., Government Guar. Fund of Republic of Finland v. Hyatt Corp.,* 955 F.Supp. 441, 455–56 (D.Vi.1997) (dismissing a party's claim for tortious interference with prospective economic advantage where that claim was duplicitous of the party's claim for tortious interference with contract).

 To successfully plead a claim for tortious interference with contract, a party must allege "(1) an existing contractual relationship; (2) intentional interference with that relationship; (3) the malicious nature of the interference; and (4) damages resulting from the interference." *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.,* 870 F.Supp. 1237, 1247 (D.N.J. 1994). The contracts at issue here are the Mortgage and the Promissory Note. Like all contracts, these contracts contain a covenant of good faith and fair dealing with which N.V. must comply. *See Woods,* 910 F.Supp. at 1034. Interference with this contractual provision is sufficient to satisfy the relevant element of the tortious interference claim. SMA alleges that the Dutch Investors acted intentionally: "Rodin Properties, at the behest and direction of ABN and the other Dutch Institutional Investors, designed and implemented a plan to gain control of the Shore Mall property." SMA Crossclaim, ¶ 63. SMA has also satisfied the malice requirement in its pleadings. In cases involving intentional interference with contract, malice is understood to mean "the intentional doing of a wrongful act without justification or excuse." *Woods,* 910 F.Supp. at 1031 (quoting *Sgro v. Getty Petroleum Corp.,* 854 F.Supp. 1164, 1183 (D.N.J.1994), *aff'd,* 96 F.3d 1434 (3d Cir.1996)). An act is wrongful if it is illegal or if it is "transgressive of generally accepted standards of morality." *Id.* (quoting *Baldasarre v. Butler,* 254 N.J.Super. 502, 526, 604 A.2d 112, 124 (App.Div.1992), *aff'd in part, rev'd in part,* 132 N.J. 278, 625 A.2d 458 (1993)). SMA alleges that it was illegal for N.V.

and the Dutch Investors to attempt to gain control of the Shore Mall property pursuant to the plan that had been devised for this purpose. *See* SMA Crossclaim, ¶¶ 61, 62. SMA claims that the Dutch Investors' tortious interference with the Mortgage and Promissory Note has depressed the value of the Shore Mall property. *See id.*, ¶ 84.

█ Based on the averments in its Crossclaim, the Court finds that SMA has pled the elements necessary to state a claim for tortious interference with contract. Such a claim cannot lie, however, if it is pled against a party to the contract with which there has allegedly been interference. *See Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 760–61, 563 A.2d 31, 42 (1989) ("[A] party to an existing or prospective contractual relationship cannot be held directly liable for tortious interference with that relationship, because the actions of the parties to a contract are judged under contract law."). The Dutch Investors claim that their status as N.V.'s shareholders make them parties to the contracts between N.V. and SMA with which they allegedly interfered. *See* Memorandum of Law in Support of N.V.'s and N.V's Shareholders' Motion to Dismiss at 22–24; Memorandum of Law in Support of AAB's Motion to Dismiss at 12.

█ A body of case law and commentary has developed to address the propriety of suing a corporation's officers and directors for intentionally interfering with contracts to which the corporation is a party. Because a corporation can only act through its officers and directors, a corporate officer or director can only interfere with a contract to which the corporation is a party where the officer or director acts outside the scope of his authority as an officer or director. *See Communications Programming, Inc. v. Summit Manufacturing, Inc.*, No. Civ. A. 98–253, 1998 WL 329265, at *8 (D.N.J. June 16, 1998); *see also Pennington Trap Rock Co. v. Pennington Quarry Co.*, 22 N.J.Misc. 318, 322, 38 A.2d 869, 871 (1944) ("[A]n employee or

officer of a corporation who acts in good faith and believes that what he does is for the best interests of the corporation in seeking to have the corporation breach its contract with a third party should be absolved from a suit of this character but the actions of the individual must be with justification."). If an officer or director acts in good faith within the scope of his authority as an officer or director, then that officer or director cannot be considered a third party to any contracts made by the corporation and an action for tortious interference with contract cannot be maintained against him. The New Jersey cases cited by the Dutch Investors support this proposition. *See id.* (holding that the individual defendants "were acting as principals and/or officers" of the corporation and therefore there was "no third party present to interfere" in the relationship to which their corporation was a party); *Sammon v. Watchung Hills Bank for Savings*, 259 N.J.Super. 124, 127, 611 A.2d 674, 676 (Law Div.1992) (holding that an action for tortious interference with prospective economic advantage may not be directed against an individual who is an officer and the sole stockholder of a corporation which is a party to the economic relationship at issue).

█ Where it is a corporation's shareholders—rather than its officers and directors—who do the interfering, precedent does not make clear whether and under what circumstances a suit for tortious interference with contract can stand. It follows from *Communications Programming* and *Sammon* that shareholders who exercise a sufficient degree of control over the corporation in which they own an interest—either by also serving as officers or directors or by controlling the officers or directors—can only be sued for tortiously interfering with the corporation's contracts in accordance with the law governing such suits against officers and directors. While SMA's Crossclaim states that the Dutch Investors own 95 percent of N.V.'s shares, the extent of the influence and control that

the Dutch Investors exercised over N.V. is not clear. *See* SMA's Crossclaim, ¶ 41. The Crossclaim states that N.V. had a Board of Supervisory Directors, but the only information offered regarding the Board's composition is the fact that Rodin and Leo Ullman[3] served on the Board. *See id.*, ¶¶ 49, 52. The presence of these individuals suggests that the Board was not simply a puppet whose every decision was controlled by the Dutch Investors as does the fact that the Board voted to reject the recommendations contained within the IBUS/UBS report,[4] specifically the suggestion that N.V. develop a plan to gain control of the Shore Mall property. *See id.*, ¶¶ 61, 62. Based on the allegations made by SMA in its Crossclaim, the Court finds that the Dutch Investors were not parties to N.V.'s contracts with SMA.[5] The Court will deny the motions to dismiss SMA's tortious interference with contract claim against the Dutch Investors.

## B. CONTRIBUTION CLAIMS

### 1. Choice–of–Law Standard

A claim for contribution necessarily derives from a separate, underlying claim. *See* 3 Moore's Fed. Practice § 14.04[2] (3d ed.1998). It is the law of the jurisdiction which governs the underlying claim that also governs the claim for contribution. *See* Restatement (Second) of Conflicts of Laws § 173 (1969) ("The law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor."); *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 401 (3d Cir.1987).

### 2. SMA's Contribution Claim against the Dutch Investors and Rodin's Contribution Claim against the Dutch Investors

SMA and Rodin argue that their claims against the Dutch Investors for contribution should be governed by Dutch law. *See* Rodin and SMA's Choice–of–Law Brief at 2. N.V., N.V.'s shareholders, and AAB argue that either New Jersey law governs these claims or the claims are not pled with enough specificity to determine which jurisdiction's law to apply. *See* N.V. and N.V.'s Shareholders' Choice–of–Law Brief at 3–4; AAB's Choice–of–Law Brief at 6–8. In short, these parties state that the only basis for the contribution claims made in SMA's and Rodin's pleadings is the Dutch Investors' alleged tortious interference with contract and expected economic advantage. *See* N.V. and N.V.'s Shareholders' Choice–of–Law Brief at 5–6; AAB's Choice–of–Law Brief at 6–8. They argue that if tortious interference—which is governed by New Jersey law—is in fact the basis for SMA's and Rodin's contribution claims, then those contribution claims are governed by New Jersey law. *See id.*

SMA and Rodin argue that the basis for their contribution claims is the Dutch In-

---

**3.** Leo Ullman is one of the original partners of SMA.

**4.** SMA alleges that N.V.'s Board of Supervisory Directors hired IBUS Asset Management B.V., a Dutch company, and its American affiliate, UBS Asset Management (collectively "IBUS/UBS") to suggest ways to improve the cash flow generated by the Shore Mall property. *See* Crossclaim, ¶ 60. IBUS/UBS delivered its report to the N.V. Board in May of 1994. *See id.*, ¶ 61. The report allegedly contained the following recommendations:

> The IBUS/UBS reports recommended that Rodin Properties "[d]evelop a plan to gain control of the Property." To do this, IBUS/ UBS recommended that Rodin Properties first buy out the minority shareholders and

> seek de-listing from the Amsterdam stock exchange, then "seek the resignations of Mr. Rodin and Mr. Ullman from the Supervisory Board of the Company," and finally "institute immediate steps to gain control of the Property, so that the Company can effect its disposition without the interference of its owners, who are none other than the Rodin interests." In other words, IBUS/ UBS recommended taking control of the Shore Mall property.
>
> *Id.*

**5.** The Court recognizes that the discovery process may yield information which would indicate otherwise.

vestors' knowledge through personal investigation of the same information that SMA allegedly failed to reveal to Cushman & Wakefield and that Rodin allegedly misrepresented to N.V. when N.V. and the Dutch Investors were first exploring the possibility of investing in the Shore Mall property. *See* Rodin and SMA's Choice-of-Law Brief at 4 ("Although the factual bases for Neal Rodin's and SMA's contribution claims are pled with great specificity in the Amended Third–Party Complaint and the Crossclaim, the essence of these claims is simple. If Neal Rodin and SMA are liable for harm caused to the plaintiff because of what they told or did not tell it, then the Dutch investors are also liable because they knew all of the information that the plaintiff alleges as the basis of its claims."); Rodin and SMA's Opposition to the Plaintiff's and the Dutch Investors' Motion to Dismiss at 33 ("[The Rodin and SMA] contribution claims against the Dutch Investors are primarily based on the Dutch Investors' Failure to disclose to N.V. the facts in their possession about the transaction at issue."). They argue that it was SMA's alleged omission and Rodin's alleged misrepresentation which gave rise to Cushman & Wakefield's contribution claim against SMA and N.V.'s onrechtmatige daad claim against Rodin. *See* Cushman & Wakefield, Inc.'s Third–Party Complaint, ¶ 10; Cushman & Wakefield of Pennsylvania, Inc.'s Third–Party Complaint, ¶ 10; Third Amended Complaint, ¶ 71; Rodin and SMA's Choice-of-Law Brief at 3–4. SMA and Rodin argue that because the contribution claims against them are governed by Dutch law their claims against the Dutch Investors for contribution are also governed by Dutch law. *See* Rodin and SMA's Choice-of-Law Brief at 4.

 N.V., N.V.'s shareholders, and AAB dispute the applicability of Dutch law to SMA's and Rodin's contribution claims, arguing that the Court cannot ascertain from SMA's and Rodin's pleadings the nature of the claim underlying their claim for

contribution. *See* N.V. and N.V.'s Shareholders' Choice-of-Law Brief at 4; AAB's Choice-of-Law Brief at 7. To support their argument, N.V., N.V.'s shareholders, and AAB cite to Fed.R.Civ.P. 8 which states that "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claims, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief." *See* N.V. and N.V.'s Shareholders' Choice-of-Law Brief at 4. In other words, the pleading must contain more than a conclusory statement that the pleading party is entitled to relief from another party; it must state how and why the claimant is entitled to such relief. *See Rainbow Trucking, Inc. v. Ennia Ins. Co.*, 88 F.R.D. 596, 597 (E.D.Pa.1980) (discussing pleading requirements with regard to a claim for contribution). When the pleading at issue is a third-party complaint for contribution, the pleading "must allege facts sufficient to show joint tortfeasorship, common liability to the plaintiff, and the original defendant's right to contribution from the third-party defendant in case the plaintiff recovers." 18 Am.Jur.2d Contributions § 121 (1985). This is because a party cannot succeed on a claim for contribution unless there is joint tortfeasorship and common liability. *See Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F.Supp. 790, (D.N.J.1996) ("A cause of action for contribution arises 'when two or more persons become liable in tort to the same person for the same harm.'") (quoting Restatement (Second) of Torts § 886A(1) (1977)).

 The Court finds that N.V., N.V's shareholders, and AAB accurately assert that Rodin and SMA failed to include in their pleadings a "short and plain statement" explaining why they are entitled to contribution from the Dutch Investors. SMA's and Rodin's omissions, however, do not have the effect N.V., N.V.'s shareholders, and AAB claim that they do. SMA and Rodin have failed to clearly articulate their theories of "joint tortfeasor-

ship, common liability to the plaintiff, and the original defendant's right to contribution from the third-party defendant in case the plaintiff recovers." 18 Am.Jur.2d § 121 (1985). These theories—while relevant to determining whether SMA's and Rodin's claims for contribution are supported by the facts of the case—are not relevant to determining what law to apply to SMA's and Rodin's contribution claims. It is the law of the jurisdiction which governs the claims underlying SMA's and Rodin's contribution claims that also governs SMA's and Rodin's claims. N.V. sued Rodin and Cushman & Wakefield for onrechtmatige daad under Book 6, § 162 of the Dutch Civil Code. *See* Third Amended Complaint, ¶¶ 71, 89. Cushman & Wakefield in turn sued SMA and Rodin for contribution based on N.V.'s claim against them for onrechtmatige daad. *See* Cushman & Wakefield, Inc.'s Answer, Crossclaim, and Third Party Complaint at 8, 11; Cushman & Wakefield of Pennsylvania, Inc.'s Answer, Crossclaim, and Third Party Complaint at 8, 11. It is N.V.'s onrechtmatige daad claims which serve as the underlying claims to both Rodin's and SMA's contribution claims against the Dutch Investors. Because the underlying claims are governed by Dutch law so too are Rodin's and SMA's claims for contribution.

Because Rodin and SMA have failed to include in their pleadings a "short and plain statement" indicating why they are entitled to contribution from the Dutch

Investors, the Court will grant these parties leave to amend their pleadings to include such a statement. *See* Fed.R.Civ.P. 15(a) ("[A] party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires.").[6] Because Rodin and SMA will be amending their pleadings, the Court will dismiss without prejudice the motions to dismiss Rodin's and SMA's contribution claims that have been filed by N.V., N.V.'s shareholders, and AAB. These parties may file new motions once Rodin and SMA have amended their pleadings.

## III. CONCLUSION

For the foregoing reasons, the Court finds that New Jersey law applies to SMA's Rule 14 Claim in its entirety as well as to SMA's Crossclaim for tortious interference with contractual relationship and intentional interference with expectation of economic benefit or advantage. The Court will grant the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's Crossclaim for intentional interference with expectation of economic benefit or advantage. The Court will deny the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's Rule 14 Claim for lender liability and breach of fiduciary duties and with regard to SMA's Crossclaim for tortious interference with contractual relationship.

The Court further finds that Dutch law applies to SMA's Crossclaim for contribu-

---

**6.** N.V., N.V.'s shareholders, and AAB argue that Rodin and SMA were required under Fed. R. Civ. P. 44.1 to provide the parties to this action with notice in their pleadings of their intent to rely on Dutch law. *See* N.V. and N.V.'s Shareholders' Choice–of–Law Memorandum at 6 n. 5; AAB's Choice–of–Law Memorandum at 7. Fed.R.Civ.P. 44.1 provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." The Advisory Committee Notes that accompany this rule state that the notice "may, but need not be, incorporated in the pleadings." The Notes further state that "[t]he liberal provisions for amendment of the pleadings afford help if the

pleadings are used as the medium of giving notice of the foreign law; but it seems best to permit a written notice to be given outside of and later than the pleadings, provided the notice is reasonable." In view of this commentary, Rodin's and SMA's failure to explicitly state in their pleadings their intent to rely upon Dutch law for their contribution claims is not fatal. Notice has been given, and Rodin and SMA will now amend their pleadings to contain a "short and plain statement" explaining why they are entitled to contribution from the Dutch Investors. N.V., N.V.'s shareholders, and AAB will have an opportunity to respond to the amended pleadings, as well as an opportunity to file a motion to dismiss and/or other dispositive motions.

tion and Rodin's Third–Party Complaint for contribution. The Court will give SMA and Rodin leave to amend their pleadings to reflect the fact that Dutch law governs these claims. The amended pleadings should include a "short and plain statement" indicating why SMA and Rodin are entitled to contribution from the Dutch Investors. The Court will dismiss without prejudice the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's and Rodin's claims for contribution from the Dutch Investors.

An appropriate order will be entered.

## ORDER

**THIS MATTER** having come before the Court on the following motions: (1) motion of Rodin Properties–Shore Mall, N.V. ("N.V.") and N.V.'s shareholders, specifically Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V., and Centraal Beheer Pensioenverzekering N.V. (collectively "N.V.'s shareholders"), to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of defendant Neal Rodin ("Rodin") and the Rule 14 Claim and Crossclaim of third-party defendant Shore Mall Associates ("SMA"); and (2) motion of ABN AMRO Bank N.V. ("ABN Bank") and ABN AMRO Holding N.V. ("ABN Holding") (collectively "AAB") (AAB and N.V.'s shareholders collectively "the Dutch Investors") to dismiss, or in the alternative to sever, defendant Rodin's Amended Third–Party Complaint and third-party defendant SMA's Crossclaim; and

The Court having issued an opinion and order on January 27, 1999 regarding the abovereferenced motions, as well as the motion of Thelen Reid & Priest LLP ("Thelen Reid"), successor to third-party defendant Reid & Priest LLP ("Reid"), and third-party defendant Leo Ullman ("Ullman") to dismiss, or in the alternative to sever, the Third–Party Complaints of defendants Cushman & Wakefield of Penn-sylvania, Inc. and Cushman & Wakefield, Inc. (collectively "Cushman & Wakefield"); and

The Court having taken the following actions in its January 27, 1999 opinion and order: (1) granted the motion of Thelen Reid and Ullman with regard to Count Four and denied it with regard to Counts One through Three; (2) denied the motion of N.V. and N.V.'s shareholders to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of Rodin and the Rule 14 Claim and Crossclaim of SMA and the motion of AAB to dismiss, or in the alternative to sever, Rodin's Amended Third–Party Complaint and SMA's Crossclaim on all grounds except those which allege that Rodin and SMA have failed to state a claim on which relief may be granted; (3) ordered N.V., N.V.'s shareholders, AAB, Rodin, and SMA to brief the choice-of-law issues raised by the motions filed by N.V., N.V.'s shareholders, and AAB; and (4) reserved judgment on whether to dismiss the claims raised in SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party Complaint based on failure to state a claim until the Court could resolve the question of which law to apply to the claims; and

The Court having received briefs from N.V., N.V.'s shareholders, and AAB regarding the choice-of-law issues raised by the motions filed by N.V., N.V.'s shareholders, and AAB; and

The Court having reviewed the submissions of the parties;

For the reasons stated in the Court's opinion of this date;

**IT IS** on this *5th* day of May, 1999 hereby

**ORDERED** that New Jersey law will govern SMA's Rule 14 Claim in its entirety, SMA's Crossclaim for tortious interference with contractual relationship, and SMA's Crossclaim for intentional interference with expectation of economic benefit or advantage; and

**IT IS FURTHER ORDERED** that the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's Crossclaim for intentional interference with expectation of economic benefit or advantage are **GRANTED**; and

**IT IS FURTHER ORDERED** that the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's Rule 14 Claim for lender liability and breach of fiduciary duties and with regard to SMA's Crossclaim for tortious interference with contractual relationship are **DENIED**; and

**IT IS FURTHER ORDERED** that Dutch law will govern SMA's Crossclaim for contribution and Rodin's Third–Party Complaint for contribution; and

**IT IS FURTHER ORDERED** that SMA and Rodin shall amend their pleadings to include a "short and plain statement" indicating why they are entitled to contribution from the Dutch Investors; and

**IT IS FURTHER ORDERED** that the motions to dismiss filed by N.V., N.V.'s shareholders, and AAB with regard to SMA's and Rodin's claims for contribution from the Dutch Investors are **DISMISSED** without prejudice.